(No. 23748.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JESS WERNER, Plaintiff in Error.

*Opinion filed December 10, 1936.*

HODGES & TRAGETHON, and HERMAN H. COHN, for plaintiff in error.

OTTO KERNER, Attorney General, (A. B. DENNIS, and JOHN F. McGINNIS, of counsel,) for the People.

Mr. JUSTICE ORR delivered the opinion of the court:

We are asked by this writ of error to determine primarily whether the Retailers' Occupation Tax act, which imposes a three per cent tax on gross receipts of sales of tangible personal property at retail, is in its operation unconstitutional because as applied to retail sales of gasoline it is allegedly a tax upon a tax. The case comes here from the county court of Sangamon county, which held plaintiff in error, Jess Werner, guilty of willfully failing to make a return and report to the Director of Finance of the State of Illinois and assessed a fine against him of $250 and costs.

The case was tried below upon a stipulation of facts, wherein it was agreed that defendant, Werner, was on the dates referred to in the various counts engaged in the sale

of gasoline and other products, such as grease, oil, etc.; that the products sold by him were purchased in bulk from various refineries and wholesalers; that defendant paid, as a separate item of the cost of the wholesale billing or statement, a Federal tax on gasoline at the rate of one and one-half cents per gallon up to January 1, 1934, and subsequently at the rate of one cent per gallon; that the total of the Federal excise tax paid by defendant during the period covered by the information was $3541.26, with an additional $160 paid on motor oil. It was further stipulated that the "gross receipts" of the business done by defendant for the period of the information was $35,285.65, which sum included the Federal excise tax of $3701.26 and the Illinois motor fuel tax of $7980.25, the latter sum having been collected by defendant pursuant to the law and paid to the Department of Finance. It was stipulated that the director of the Department of Finance had established certain rules, and that special rule 14, as revised February 1, 1934, and set forth in People's exhibit "C," provided that, in determining "gross receipts" from sales of motor fuel, dealers were allowed to deduct the Illinois motor fuel tax of three cents per gallon collected by them from the purchaser.

By his own stipulation Werner has admitted that he has failed to comply with the express provisions of the Retailers' Occupation Tax act, (Smith-Hurd Stat. 1933, chap. 120, p. 2453; Cahill's Stat. 1933, chap. 120, p. 2389;) section 3 of which requires monthly reports to the Department of Finance for all those engaged in any occupational selling of tangible personal property at retail. He has also admitted that under the regulations of the Department of Finance, he, in common with all other gasoline retailers in this State, was allowed to, and did, deduct from his gross receipts each month the amounts which he had previously collected at the rate of three cents per gallon and reported under the Motor Fuel Tax law of 1929. (Smith-Hurd

Stat. 1933, chap. 120, p. 2447; Cahill's Stat. 1933, chap. 120, p. 1901.) He now seeks to justify his failure to make the monthly reports and payments required, with the deductions allowed, under the Retailers' Occupation Tax act, by allegations that the act is unreasonable, discriminatory, amounts to double taxation, and is therefore unconstitutional.

We have held the Retailers' Occupation Tax act is valid and constitutional, that it does not deprive a retailer of property without due process of law, and that its imposition as a privilege tax, measured by gross receipts upon retail sales of tangible personal property, does not render it invalid for lack of uniformity. (*Reif* v. *Barrett,* 355 Ill. 104.) We have also held that the fact that in some instances, because of competition, the retailer's inability to pass the tax on to the consumer does not make the act inapplicable to such retailer or unlawful, and that the act is not unconstitutional as resulting in double taxation, since it imposes an occupation tax and not a property tax. (*Franklin County Coal Co.* v. *Ames,* 359 Ill. 178.) It is also pertinent to the issues here raised, to observe our holding, under the Motor Fuel Tax law of 1929, that the gasoline retailer does not pay the tax but simply acts in a fiduciary capacity as an agent of the State in its collection, and that the money collected in no sense belongs to the retailer but is the property of the State. *People* v. *Kopman,* 358 Ill. 479.

Werner first erroneously contends that "he is paying three cents per gallon on all gasoline sold to consumers or used by himself for the privilege of carrying on the business of the retail sales of gasoline for use and consumption." By this statement he refers to the payment of three cents per gallon by the consumer under the Motor Fuel Tax law of 1929, which he, the retailer, simply collects for the State in a fiduciary capacity and later passes over to the Department of Finance, less the actual cost of making the collection and payment, not to exceed two per cent of the amount collected. Under these circumstances it will

readily be seen that Werner has actually paid nothing under the Motor Fuel Tax law for the privilege of carrying on his retail business, but, on the other hand, he is actually paid a small fee for collecting this tax from the consumer and turning it over to the State. He is then allowed to deduct the amounts collected and paid over under the Motor Fuel Tax law from his gross receipts which are liable for three per cent tax under the Retailers' Occupation Tax act. Under no sense of the word, therefore, could such a transaction be properly termed a tax upon a tax, or double taxation.

The claim that Werner, as a gasoline retailer, has paid a Federal excise tax of one cent per gallon since January, 1934, is likewise without substance in law or fact. Section 617 of the Internal Revenue laws (26 U. S. C. A. 3601, p. 390,) levies a Federal excise tax of one cent per gallon on the producer or importer of gasoline and prescribes for his registration and the conditions under which he shall furnish bonds, make returns and pay the tax to the Federal collector of the district. No excise tax is imposed upon or paid by the retailer of gasoline. It may be true that the Federal excise tax upon gasoline which is paid by the producer or importer is, upon its sale to the retailer, added to the cost of the product as a separate charge, in the same manner as transportation, delivery, insurance or other charges are added. The itemization of these separate charges, or any of them, in the invoices sent by the producer or importer to the retailer, does not change the fact that the producer or importer has paid the tax to the Federal government and has thereby, in effect, raised the cost of the gasoline to the retailer. The Federal excise tax has therefore made the gasoline cost one cent per gallon more to the retailer, just as import and other taxes levied by the Federal government are added to the price of cigars, cigarettes, clothing or automobiles sold by producers or importers to retailers. The retailer, whether of tobacco, gasoline, clothing or automobiles, has no duty or burden of col-

lecting or paying over to the Federal government any manufacturer's, importer's or excise taxes—they have already been paid before he gets the article, and they are as much a part of the cost to him as are freight, express, insurance or other charges which enter into and increase the cost of such articles. When either the tobacco, the gasoline, the clothing or the automobile is sold, the retailer recoups himself against loss when he gets at least as much as he had paid for the article, regardless of how much Federal or other taxes may have been paid at different stages by the processors, importers or manufacturers who preceded him in its ownership.

The point made that the Department of Finance was without power to prescribe rule 14, by which retailers of gasoline, in determining their gross receipts, might deduct the amounts collected at three cents per gallon under the Motor Fuel Tax law, is not sustained by competent authority. We have often held that the manner and method of enforcing such a law must of necessity be left by the legislature to the reasonable discretion of administrative officers. (*People* v. *Yonker*, 351 Ill. 139; *Reif* v. *Barrett, supra; Lydy* v. *City of Chicago*, 356 Ill. 230; *City of Chicago* v. *Matthies*, 320 id. 352; *City of Pekin* v. *Industrial Com.* 341 id. 312.) The rule above mentioned evidences a reasonable and necessary exercise of the discretion conferred by the legislature upon the Department of Finance.

The failure of the trial court to enter any affirmative finding of guilt against Werner upon the stipulations of fact as a basis of ordering him fined is assigned as error. Under a similar situation this court decided adversely to such a contention in *Hoch* v. *People*, 219 Ill. 265. There, at pages 286-87, it was said: "The last point covered by the assignments of error is, that the judgment is insufficient because it fails to show an adjudication by the court that the defendant was guilty of the crime for which he was sentenced. * * * The argument is, that in order to make

a valid judgment the record must show the *ideo consideratum est,* or, in other words, it must be considered by the court that the defendant is guilty of murder. If that position were correct, the proceedings would only be set aside back to the point where the error was committed and the cause would be remanded for a proper judgment on the verdict. [Quoting cases.] But we are of the opinion that the judgment was legal and valid. The whole record is to be considered, and if from the whole record it is apparent that the court found the defendant guilty of the crime and sentenced him to the punishment fixed by the law and the verdict, that is all that is required. It is necessary that the record should show that there was a sentence upon the verdict, but if it was necessary that the court approve the verdict, it was done by overruling the motion for a new trial. * * * If the court states the finding of the jury and pronounces sentence thereon, that is a judicial determination of the fact of defendant's conviction and is all that is required. (*Davis* v. *Utah Territory,* 151 U. S. 262.) The verdict in this case determines the character of the crime and the penalty, and the sentence upon the verdict is an adjudication by the court and is sufficient as a judgment." Under the stipulations presented, Werner had admitted his guilt by stipulating that he had failed to comply with the statute, which required him to make monthly reports of his gross sales of gasoline. No issue, either of law or fact, remained to be determined. Under such circumstances, where there remained nothing to be determined or to be done except to pass sentence, which was done, no sound reason could now be advanced for holding that there was not a legal conviction. *People* v. *Andrae,* 295 Ill. 445.

The judgment is affirmed.     *Judgment affirmed.*