(No. 43376.—

AMERICAN OIL COMPANY *et al.*, Appellees, *vs.* GEORGE MAHIN, Director of Revenue, *et al.*, Appellants.

*Opinion filed September 30, 1971.*

WILLIAM J. SCOTT, Attorney General, of Chicago, (FRANCIS T. CROWE and CALVIN C. CAMPBELL, Assistant Attorneys General, of counsel,) for appellants.

MARK H. BERENS, of Chicago, for appellees.

Mr. JUSTICE KLUCZYNSKI delivered the opinion of the court:

This is an appeal by the Department of Revenue of the State of Illinois from a judgment of the circuit court of Cook County declaring unauthorized and contrary to law a proposed revision to Rule 52 (successor to Rule 14, Department of Finance) of the Retailers' Occupation Tax Rules and Regulations incorporated by reference in the Use Tax Rules and Regulations pursuant to Rule No. 11 thereof) filed by the Director of Revenue with the Secretary of State of Illinois.

Since the passage of the Retailers' Occupation Tax Act in 1933 the Department of Revenue (and its predecessor the Department of Finance) has interpreted the Retailers' Occupation Tax and the Use Tax Acts so as to adopt a method of collection to exclude the motor fuel tax from the

base upon which the retailers' occupation tax and the use tax were compiled.

In the revised Rule 52 the Department of Revenue changed its method and would require retailers to include the motor fuel tax in the base upon which the retailers occupation tax and the use tax are computed. The revised rule was filed subsequent to litigation relative to prior Rule 52 in the circuit court of Cook County. (Dorothy Hradek et al. vs. Marshall Korshak, Director of Revenue of the State of Illinois, Number 66 CH 7491.) There the court stated in the final decree that an application of Rule 52 pertaining to the cigarette use tax (Ill. Rev. Stat. 1967, ch. 120, par. 453.31) was "in contravention of the uniformity provisions of Section 1 of Article IX of the Illinois Constitution" because it discriminated between people of the same class in light of the provision of Rule 52 applicable to the Motor Fuel Tax. The court further stated that "the above discrimination might be cured by amending said Rule 52 of the Department of Revenue in such manner as will bring it into conformity with the views expressed in this Decree, specifically, in such wise as will cause users of cigarettes to be treated in the same manner as users of motor fuel with respect to inclusion or deduction from the selling price of a package of cigarettes for the purposes of computation of Use Tax the amount attributable to Cigarette Use Tax, to the end that sums attributable to Motor Fuel Tax and Cigarette Use Tax shall be treated alike, to-wit: either they are both included or both excluded from the selling price of the commodities in question for purposes of computation of Use Tax."

Pursuant to this decision the Director of Revenue revised Rule 52 to include both uniformly for purposes of computation of the use tax. This suit was then instituted by the plaintiffs as a class action for and on behalf of themselves and others similarly situated, under the general chancery jurisdiction of the court, to enjoin the imposition

of an "illegal, unauthorized and invalid tax." (*Owens-Illinois Glass Co.* v. *McKibbin,* 385 Ill. 245.) Plaintiffs asked the court to declare the proposed revision of Rule 52 to be unauthorized and contrary to law, and to enjoin the Director of Revenue from placing the proposed revision into effect.

On May 6, 1970, the trial court found that such reversal of position after 35 years of continuous, uniform construction was improper, where the existing construction was manifestly correct, and concluded that the authority to include motor fuel tax receipts in the retailers' occupation tax and use tax base now lies exclusively with the legislature. This direct appeal followed.

The first issue in this case involves a determination whether prior Rule 52 of the Department of Revenue is correct. In so determining the correctness of the rule, we must interpret the Retailers' Occupation Tax Act (Ill. Rev. Stat. 1969, ch. 120, pars. 400 through 453), the Illinois Use Tax Act (Ill. Rev. Stat. 1969, ch. 120, pars. 439.1 through 439.22), and the Illinois Motor Fuel Tax Law (Ill. Rev. Stat. 1969, ch. 120, pars. 417 through 434). Rule 52 provides in pertinent part: "Persons engaged in the business of selling motor fuel to purchasers for use or consumption are also required to remit retailers' occupation tax to the Department upon their gross receipts from such sales. However, in computing their retailers occupation tax liability, persons who sell motor fuel for use or consumption may deduct the Illinois motor fuel tax collection with respect to such sales, because the Illinois motor fuel tax is on the consumer and is not considered to be a part of the 'selling price' of the motor fuel."

Revised Rule 52, which would require retailers of motor fuel to include the Illinois motor fuel tax in the base upon which the retailers' occupation tax and use tax are computed, provides in pertinent part: "Persons engaged in the business of selling motor fuel to purchasers for use or con-

sumption are also required to remit retailers' occupation tax to the Department upon their gross receipts from such sales. Effective January 1, 1970, no amount may be deducted from gross receipts from retail sales of motor fuel on account of the tax imposed by the Illinois Motor Fuel Tax Law."

Plaintiffs contend that both case law and the aforementioned statutes support their conclusion that the legal incidence of the motor fuel tax falls on the consumer of motor fuel and not upon the distributor or retailer, and, thus, that tax moneys received by the retailer or distributor pursuant thereto should not be included in the base upon which the retailers' occupation and use taxes are computed. To support the conclusion that the tax is imposed on the consumer and that the retailer or distributor acts only as collection agent, plaintiffs cite *People* v. *Werner,* 364 Ill. 594. There the appellant contended that he should not be required to pay the retailers' occupation tax on his sales of gasoline because he was paying the motor fuel tax upon the privilege of making such sales. The court held that the motor fuel tax is not imposed upon the taxpayer's privilege of selling gasoline and expressly reaffirmed the holding in *People* v. *Kopman,* 358 Ill. 479, that the Motor Fuel Tax Law "makes the distributor the agent of the State as a collector of the tax." (358 Ill. at 482.) See also: *People* v. *Strong,* 363 Ill. 602; *People* v. *Deep Rock Oil Corp.,* 343 Ill. 388.

To further support the conclusion that the motor fuel tax is imposed on the consumer, plaintiffs cite portions of the Motor Fuel Tax Law which impose a tax upon the privilege of operating motor vehicles on public highways and waterways and is based on the consumption of motor fuel. According to section 7 (par. 423) the tax is imposed upon consumption even in the absence of a sale of motor fuel. If a person, other than a licensed distributor, does not pay the motor fuel tax at the time of purchase, he must make payment directly to the Department of Revenue when he uses

the motor fuel. According to section 6 (par. 422) a motor fuel distributor must pay the tax on motor fuel which he does not sell but uses himself on the highways or waters of Illinois. If the tax is paid, but the fuel is not used on the highways or waters of the State, the tax is refunded directly to the user, not to the selling distributor or retailer. (Section 13, par. 429.) In addition, section 6 provides: "In each subsequent sale of motor fuel [by a retailer] on which the amount of tax imposed under this Act has been collected as herein provided, the amount so collected shall be added to the selling price, so that said amount is paid ultimately by the user of said motor fuel."

Considering the foregoing, it is clear to us that the Motor Fuel Tax Law is imposed on the consumer of fuel and that the retailer or distributor acts only as the collection agent for the State. We now consider this in relationship to the retailers' occupation and use taxes.

The Retailers' Occupation Tax Act imposes a tax upon persons engaged in the business of selling tangible personal property at retail, measured by "the gross receipts from such sales of tangible personal property" (Ill. Rev. Stat. 1969, ch. 120, par. 441), which are defined to mean "the total selling price or the amount of such sales." (Ill. Rev. Stat. 1969, ch. 120, par. 440.) "Selling price" or the "amount of sale" is defined as the consideration for a sale valued in money whether received in money or otherwise. Ill. Rev. Stat. 1969, ch. 120, par. 440.

The Illinois Use Tax Act imposes a tax upon the privilege of using in this State tangible personal property purchased at retail from a retailer measured by "the selling price of such property." (Ill. Rev. Stat. 1969, ch. 120, par. 439.3.) The "selling price" is defined as the consideration for a sale valued in money whether received in money or otherwise. The word "consideration" has been defined as any benefit conferred upon the promisor by any other person, to which the promisor is not lawfully entitled. (See: Black's

Law Dictionary, 4th Ed., 1957.) Also the argument is correctly made that even if there is a gift of fuel without any consideration, the tax must be paid. It is clear that the portion of money or other consideration received by the retailer as motor fuel tax is not consideration to him for the sale of the fuel. In addition, the court in the *Werner* case discussed Rule 14 (predecessor to Rule 52) and found that it "evidences a reasonable and necessary exercise of the discretion conferred by the legislature upon the Department of Finance." (364 Ill. at 599.) Thus it follows that the motor fuel tax may be excluded from the base upon which retailers' occupation and use taxes are computed and that Rule 52 was a permissible interpretation of the statutes involved.

The remaining issue to be determined is whether the Department of Revenue had the authority to revise the rule in light of the facts that: 1) at the time of the legislative enactment, the Department construed it differently; 2) it has been applied continuously and uniformly for a substantial period of time; 3) the Legislature has reenacted or amended the statute during the period of time without changing the particular wording; and 4) the court has decided that the rule was a reasonable and necessary exercise of discretion by the Department. Defendants cite many cases: (*Fribourg Navigation Co.* v. *Commissioner* (1966), 383 U.S. 272, 279-98, 15 L. Ed. 2d 751, 86 S. Ct. 862 (dissenting opinion); *Helvering* v. *Edison Bros. Stores* (8th cir., 1943), 133 F.2d 575, 581; *Safe Harbor Water Power Corporation* v. *United States* (Ct. Cl., 1962), 303 F.2d 928; *Brown Shoe Co., Inc.* v. *Commissioner* (8th cir., 1943), 133 F.2d 582; *Dixon* v. *United States* (1965), 381 U.S. 68, 14 L. Ed. 2d 223, 85 S. Ct. 1301; *Wolinsky* v. *United States* (2d cir., 1959), 271 F.2d 865; *Aran* v. *United States* (9th cir., 1958), 259 F.2d 757, 759; *Campbell* v. *Brown* (5th cir., 1957), 245 F.2d 662, 666) for the proposition that an administrative agency is not irrevocably bound to a prior erroneous construction of a statute. However, we find that

these are not controlling because we have determined that Rule 52 is the correct interpretation of the statutes involved.

The cases cited by plaintiff are more persuasive. In *United States* v. *Leslie Salt Co.,* 350 U.S. 383, 100 L. Ed. 441, 76 S. Ct. 416, the United States Supreme Court refused to permit the Treasury Department to reverse its earlier and long-standing interpretation that certain types of promissory notes were not "debentures" or "certificates of indebtedness", and thus were not subject to Federal documentary stamp taxes. The court stated: "There are persuasive reasons for construing 'debentures' and 'certificates of indebtedness' in accordance with the Treasury's original interpretation of those terms in this statute's altogether comparable predecessors. In *Norwegian Nitrogen Prod. Co.* v. *United States,* 288 U.S. 294, 315, 77 L. Ed. 796, 807, 53 S. Ct. 350, Mr. Justice Cardozo said: 'administrative practice, consistent and generally unchallenged, will not be overturned except for very cogent reasons if the scope of the command is indefinite and doubtful. *United States* v. *Moore,* 95 U.S. 760, 763; *Logan* v. *Davis,* 233 U.S. 613, 627; *Brewster* v. *Gage,* 280 U.S. 327, 336; *Fawcus Machine Co.* v. *United States,* 282 U.S. 375; *Interstate Commerce Com.* v. *N.Y., N.H. & H. R. Co.,* 287 U.S. 178. The practice has peculiar weight when it involves a contemporaneous construction of a statute by the men charged with the responsibility of setting its machinery in motion, of making the parts work efficiently and smoothly while they are yet untried and new.' Against the Treasury's prior longstanding and consistent administrative interpretation its more recent *ad hoc* contention as to how the statute should be construed cannot stand. Moreover, that original interpretation has had both express and implied congressional acquiescence, through the 1918 amendment to the statute (*supra,* p. 391), which has ever since continued in effect, and through Congress having let the administrative interpretation remain undisturbed for so many years." (350 U.S. at 396-

397.) For similar result, see: *Cory Corporation* v. *Sauber,* 363 U.S. 709, 4 L. Ed. 2d 1508, 80 S. Ct. 1331; *Fribourg Navigation Co.* v. *Commissioner,* 383 U.S. 272; *Canada Packers, Ltd.* v. *Atchison, Topeka & Santa Fe Ry. Co.,* 385 U.S. 182, 17 L. Ed. 2d 281, 87 S. Ct. 359.

Also, in *People ex rel. Spiegel* v. *Lyons,* 1 Ill.2d 409, the court upheld a rule of the Department of Revenue which exempted from the retailers' occupation tax seeds sold for the purpose of growing products for sale. The statute did not especially exempt the seeds, but the Department had for more than ten years promulgated the rule. The court noted: "The provisions of Rule 33 appear to fall reasonably well within the natural meaning of the words of the 1941 amendment. That the statute has remained unaltered through successive sessions of the General Assembly since 1941 indicates legislative acquiescence in the contemporary and continuous administrative interpretation." 1 Ill.2d at 414.

Finally, defendants' reliance on the wording of the final decree of the circuit court in Hradek v. Korshak is misplaced. There the court stated that discrimination *might* be cured by including or excluding both the motor fuel tax and cigarette use tax from the selling price of the commodities in question for the purpose of computation of use tax. However, as stated by the same judge in the opinion in the circuit court in the instant matter, the suggestion to eliminate discrimination given in the Hradek decree "is not pertinent to, affords no basis for, and is not controlling on either the issue of the propriety of the Rule now before this court or the authority of the Department to promulgate that Rule."

For the foregoing reasons we find that the Department of Revenue did not have the authority to make the proposed revision to Rule 52 and thus the judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*