Donald H. CLARK, Commissioner, Indiana Department of State Revenue, Theodore L. Sendak, Attorney General of the State of Indiana, Robert L. Real, Mayor, City of New Albany, State of Indiana, City Council of New Albany, State of Indiana, Appellants,

v.

R. Truett LEE and Lynda L. Lee, Appellees.

Donald H. CLARK, Commissioner, Indiana Department of State Revenue, Theodore L. Sendak, Attorney General of the State of Indiana, and State of Indiana, Appellants,

v.

Michael L. HARRIS, Thomas Frazier, III, Hugo J. Bobzien, Jr., Robert W. Greene, III, J. Robert Hard, John F. McKay, D. Ray Miller, James E. Nivin, and Jack D. Wofford, Individually and As Representatives For and On Behalf Of All Other Taxpayers Similarly Situated, Appellees.

No. 779S201, 379S76.

Supreme Court of Indiana.

June 30, 1980.

Theodore L. Sendak, Atty. Gen., Alembert W. Brayton, Gregory Alan Clark, Deputy Attys. Gen., Indianapolis, for appellants.

Robert P. Ross, John K. Gordinier, Louisville, Ky., Charles W. Hoodenpyl, Jr., Jeffersonville, William M. Evans, G. Pearson Smith, Jr., Indianapolis, for appellees; Goldberg & Pedley, Louisville, Ky., Bose & Evans, Indianapolis, of counsel.

DeBRULER, Justice.

In this case we have consolidated two appeals for consideration. Both arise from judgments in which separate trial courts have declared the Indiana Occupation Income Tax Statute, Ind.Code §§ 6–3.5–3–1 through 6–3.5–3–14, as amended, unconstitutional upon application of Art. IV, § 2, of the United States Constitution as well as other federal and state constitutional provisions.

Appellees-taxpayers brought their actions pursuant to provisions of the Indiana Occupation Income Tax Act, Ind.Code § 6–3.5–3–11.5(4), (5), (6) and (7), which incorporate the refund provisions of the Adjusted Gross Income Tax Act, Ind.Code § 6–3–6–2 (administrative remedies) and Ind.Code § 6–3–6–4 (legal remedies). In addition to challenging the constitutionality of the Indiana Occupational Income Tax Act they sought to have its enforcement enjoined, to secure refunds of the occupation income taxes collected from them and to recover litigation expenses.

The Act empowers local governmental entities to enact ordinances imposing an annual tax on occupation income, as defined, at a rate of one and five tenths percent (1.5%) with provisions for the collection and administration of the tax by the Indiana Department of Revenue with ultimate receipt by the local governmental entities of the monies. The tax falls upon the income of those who devote more than fifty percent (50%) of the time they work to services performed within the local government entity imposing the tax without regard to whether they are residents or non-residents. However, according to Ind.Code § 6–3.5–3–6:

"A taxpayer is entitled to a credit against his occupation income tax liability in an amount equal to:

 (1) His state adjusted gross income tax liability incurred under IC 6–3; or

 (2) His occupation income tax liability;

whichever is less."

The courts below concluded that the Act through this "credit provision" was designed and operates to tax only the occupation incomes of non-residents working in Indiana, while effectively exempting the income of residents of the State of Indiana from the tax, thereby unconstitutionally discriminating against non-residents.

Appellant in one case sought to have the action dismissed for failure to join the local political subdivisions which had enacted ordinances and had pursuant to the statute been the final recipients of the taxes collected. The dismissal motion was denied.

Appellees in one case were allowed by court order to represent the class consisting of themselves and "all persons being non-residents of, or domiciled without the State of Indiana, while principally employed within the State of Indiana", and to maintain their action as a class action pursuant to Ind.R.Tr.P. 23.

The State has appealed raising three issues: (1) whether the trial court erred in Cause No. 379 S 76 in ordering that the action was maintainable as a class action pursuant to Trial Rule 23; (2) whether the trial court erred in Cause No. 379 S 76 in denying appellant's motion to dismiss for failure to name real parties in interest under Ind.R.Tr.P. 17, and to join parties needed for a just adjudication under Ind.R.Tr.P. 19; and (3) whether both trial courts erred in declaring the Act unconstitutional.

## I.

■ Appellants first contend that the trial court erred in ordering the case maintainable as a class action. This assertion of error is predicated upon the absence of a showing to the trial court that all the members of the putative class, i. e., all non-resident workers having paid the occupational income tax, have exhausted their administrative remedies provided by Ind.Code §§ 6–3 et seq. of the Indiana Gross Income Tax Act. In support of this contention, appellants cite *State ex rel. Indiana Dept.*

*of State Revenue v. Marion Circuit Court,* (1970) 255 Ind. 501, 265 N.E.2d 241; *Marhoefer Packing Co. v. Indiana Dept. of State Revenue,* (1974) 157 Ind.App. 505, 301 N.E.2d 209; and *Cooper v. County Board of Review of Grant County,* (1972) 150 Ind. App. 232, 276 N.E.2d 533. These cases stand for the proposition that the circuit court is without jurisdiction to determine the legality of the imposition of a tax unless the plaintiff has exhausted administrative remedies. They do not support appellants' position. In the situation with which we are confronted, the named plaintiffs personally satisfied the jurisdictional requirements of the statute by exhausting their administrative remedies before bringing their action. In so doing they afforded the state government the opportunity of reckoning with their claim. The claim itself was constitutional in nature and sought to void the statute because it discriminated against a class to which plaintiffs belonged, namely, non-residents. It was by its nature a claim which would, if successfully prosecuted by a lone plaintiff, provide a basis for classwide relief in the absence of certification. We, therefore, conclude that the certification of this action as a class action does not vitiate or evade the jurisdictional requirements of the statute and is not contrary to the case law cited. The action satisfied all of the requirements of Trial Rule 23(A) and the requirement of subsection 2 of Trial Rule 23(B), and therefore the trial court did not err in ordering the case maintainable as a class action.

■ As a derivative of appellants' argument that this action is not properly maintainable as a class action, it contends that the trial court improperly awarded attorney fees. In light of our rejection of the main contention this argument likewise fails. Appellants also argue that the class certification is erroneous because some of the members of the class work in counties other than the one in which the class action was ordered, contrary to the requirements of Ind.Code § 6–3–6–4, requiring refund suits to be initiated in the county in which the taxpayer is either resident or has a business location. The named plaintiffs complied with this statutory provision and as before we find no authority or justification for concluding that the certification of this type of claim as a class action is contrary to such provision.

## II.

■ Appellants maintained in their motion to dismiss that the governmental subdivisions of Indiana which had enacted ordinances pursuant to the authority vested in them by the Act were the real parties in interest under Ind.R.Tr.P. 17, and were needed for a just adjudication under Ind.R. Tr.P. 19. Plaintiffs below sought refund of all monies collected under and pursuant to Ind.Code §§ 6–3.5–3–1 through 6–3.5–3–13. Indiana Code § 6–3.5–3–11.5 provides that the Indiana Department of State Revenue has the occupation income tax within its province:

"The provisions of IC 6–3 [Adjusted Gross Income Tax Act] which are not in conflict with the other provisions of this chapter and which deal with one of the following subjects apply for purposes of collecting and administering the occupation income tax:

(1) Auditing of returns;

(2) Assessment and collection of tax liability;

(3) Examination of a taxpayer's books and records;

(4) Refunds;

(5) Statutes of limitation;

(6) Hearings;

(7) Legal proceedings;

(8) Maintenance of records by the department of state revenue; or

(9) Confidential treatment of taxpayer returns."

Indiana Code § 6–3.5–3–8 provides further that the distribution of collected monies to political subdivisions by the Department of

Revenue shall be "less any amount needed for the payment of refunds." Based upon this statute we conclude that the Department of Revenue is the party statutorily authorized to make refunds and to defend legal proceedings initiated for that purpose. Plaintiffs below were following the legal course set by the Legislature in its enactment and upon that fact the ruling of the trial court was warranted.

### III.

Among the conclusions of law reached by both trial courts below, they determined that the Act impermissibly discriminated against non-residents in violation of the rights, privileges and immunities guaranteed under Art. IV, § 2, of the United States Constitution. Illustrative of the findings supportive of this conclusion are these:

"11. Section 6 of the Act provides that a taxpayer is entitled to a credit against his occupation income tax liability in an amount equal to 1) his state adjusted gross income tax liability or 2) his occupation income tax liability, whichever is less.

12. The Commonwealth of Kentucky and the States of Michigan, Illinois, and Ohio, being all of the Commonwealths and States whose boundaries are contiguous to the boundaries of the State of Indiana, have entered into reciprocal agreements with the State of Indiana pursuant to I.C. 6–3–5–1 and 2 exempting from the tax imposed by the Indiana Adjusted Gross Income Tax Act of 1963, as amended, the wages, salaries, and commissions earned from sources within the State of Indiana by persons who are residents of Kentucky, Michigan, Illinois, and Ohio.

13. The named plaintiffs, as residents of the Commonwealth of Kentucky, are exempt from the tax imposed by the Indiana Adjusted Gross Income Tax Act of 1963, as amended, and are not entitled to the benefit of the credit afforded by § 6 of the Act by virtue of the reciprocal, non-resident gross income tax exemption agreement existing between the State of Indiana and the Commonwealth of Kentucky.

14. Non-residents of the State of Indiana who are exempt from the Indiana Adjusted Gross Income Tax Act of 1963, as amended, are not entitled to the benefit of the credit afforded by § 6 of the Act by virtue of the reciprocal, non-resident gross income tax exemption agreements existing between the State of Indiana and the Commonwealths or States of their residence.

15. Residents of the State of Indiana are entitled to the benefit of the credit afforded by § 6 of the Act by virtue of their being subject to the tax imposed by the Indiana Adjusted Gross Income Tax Act of 1963, as amended.

16. A taxpayer's liability under the Indiana Adjusted Gross Income Tax Act of 1963, as amended, always will exceed the taxpayer's liability under the Act, except under the most extraordinary or unusual circumstances, thereby creating a credit pursuant to § 6 of the Act that exceeds the taxpayer's liability for the occupation income tax imposed by the Act.

17. The practical effect of § 6 of the Act is to exclude substantially residents of the State of Indiana from tax liability under the Act, while fully imposing upon non-residents of the State of Indiana principally employed within the State of Indiana tax liability under the Act.

18. The Act, by and through the credit mechanism contained in § 6, operates in practical effect to impose different, discriminatory, and disparate tax treatment between residents and non-residents of the State of Indiana."

Section 6 of the Act referred to in these findings has been set out previously in this opinion. Indiana Code § 6–3–5–1 pursuant to which Kentucky residents employed in Indiana are exempt from paying Indiana

Adjusted Gross Income Tax, and which is referred to in the above findings provides:

"The tax imposed by the Adjusted Gross Income Tax Act of 1963 on the adjusted gross income derived from sources within the state of Indiana by persons who are nonresidents of this state, shall not be payable if the laws of the state or territory of residence of such persons, at the time such adjusted gross income was earned in this state, contained a reciprocal provision by which residents of this state were exempted from taxes imposed by such state on income earned in such state."

The trial court findings that there is a disparity of treatment between residents and non-residents of Indiana is correct and unassailable, and is at least implicitly conceded by appellant. The burden of the tax falls upon non-residents and residents; however, that burden is removed from residents through the credit mechanism contained in § 6. It is the position of appellant, however, that this disparity of treatment or discrimination is set off or ameliorated by the fact that residents pay an Indiana Adjusted Gross Income Tax at the higher rate of 2% which non-residents are exempt from paying.

 It is settled that Indiana as an incident of its sovereignty has the lawful power, either itself or through its political subdivisions, to impose tax burdens upon income derived from sources within its own borders. *Shaffer v. Carter*, (1920) 252 U.S. 37, 40 S.Ct. 221, 64 L.Ed. 445; *Travis v. Yale & Towne Mfg. Co.*, (1919) 252 U.S. 60, 40 S.Ct. 228, 64 L.Ed. 460. The State's due process jurisdiction to tax such income extends to that earned by non-residents of the State as well as residents. Indiana is well within its jurisdiction in imposing this occupation income tax. However, in levying an income tax the State must conform to the requirements of Art. IV, § 2, of the federal Constitution which provides:

"The Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States."

In explaining the office of this constitutional provision the United States Supreme Court in *Travis v. Yale & Towne Mfg. Co., supra*, referred to a former case as follows:

"And in *Ward v. Maryland*, 12 Wall. 418, 430 [20 L.Ed. 449], holding a discriminatory state tax upon nonresident traders to be void, the court, by Mr. Justice Clifford, said (p. 430): 'Beyond doubt these words [privileges and immunities] are words of very comprehensive meaning, but it will be sufficient to say that the clause plainly and unmistakably secures and protects the right of a citizen of one state to pass into any other state of the Union for the purpose of engaging in lawful commerce, trade, or business without molestation; to acquire personal property; to take and hold real estate; to maintain actions in the courts of the state; and to be exempt from any higher taxes or excises than are impose by the state upon its own citizens." 252 U.S. at 78, 40 S.Ct. at 231.

In determining whether a particular tax statute satisfies the command of this provision a court may examine the entire taxing structure of the state and must give due regard to the practical effect and operation of the statute. *Shaffer v. Carter, supra*.

In *Austin v. New Hampshire*, (1975) 420 U.S. 656, 95 S.Ct. 1191, 43 L.Ed.2d 530, the United States Supreme Court struck down a New Hampshire tax on income of non-residents. The tax was stricken because no compensating tax was imposed on residents:

"Against this background establishing a rule of substantial equality of treatment for the citizens of the taxing State and nonresident taxpayers, the New Hampshire Commuters Income Tax cannot be sustained. *The overwhelming fact, as the State concedes, is that the tax falls exclusively on the income of nonresidents; and it is not offset even approximately by other taxes imposed upon residents alone.*" (Emphasis added.) 420 U.S. at 665, 95 S.Ct. at 1197.

The constitutional issue here is to be resolved in the final analysis upon the deter-

mination of whether the Indiana Adjusted Gross Income Tax and the subjection of residents alone to it serves to offset the subjection of non-residents alone to the Occupational Income Tax, i. e., whether the practical effect of both acts is to leave the resident employee without a competitive advantage vis-a-vis the non-resident employee alongside whom he may work. The first step in resolving this issue is to recognize the effect and purpose of the reciprocal agreement between the two states.

Given the intent and purpose of two adjoining states to tax income, the absence of a reciprocal agreement of the type reached by Indiana and Kentucky *or* provisions in both states exempting residents who work outside their borders from the income tax would subject non-resident employees of both states to taxation by both states. As a consequence of the absence of either measure, non-resident employees would be placed at a competitive disadvantage vis-a-vis resident employees with whom they work. The reciprocal agreement is obviously the wiser and more equitable technique for avoiding that result. The agreement therefore insures that the income tax laws of both states do not work a discrimination between resident and non-resident. By it the resident and non-resident workers occupy a substantially equivalent plane. The reciprocal exemption agreement maintains an equality of opportunity between the two groups given the fact that both states impose an income tax.

■ The Occupational Income Tax Act of Indiana imposes itself upon the equilibrium and accommodation thus previously reached and subjects the non-resident employee in Indiana to an additional income tax burden not shared by resident employees alongside whom they may work. It places the resident employee at a competitive advantage. Under these circumstances as discussed, the exemption of non-residents from the payment of Indiana adjusted gross income tax does not offset the competitive disadvantage caused by the occupation tax and we are unable to find any other adequate ground for the discrimination. The Occupational Income Tax Act is, therefore, unconstitutional.

The judgments appealed from are affirmed.

GIVAN, C. J., and HUNTER, PRENTICE and PIVARNIK, JJ., concur.