**Joseph ZIEGLER, Richard Wait, Marceline Wait, Paul Johnson, Phillis Hurd, and Frank Tester, Petitioners,**

v.

**INDIANA DEPARTMENT OF STATE REVENUE, Respondent.**

No. 49T10–0204–TA–41.

Tax Court of Indiana.

Oct. 21, 2003.

Henry J. Price, Jana K. Strain, Price, Jackson, Waicukauski & Mellowitz, PC, Indianapolis, IN, Attorneys for Petitioners.

Steve Carter, Attorney General of Indiana, Ted J. Holaday, Deputy Attorney General, Indianapolis, IN, Attorneys for Respondent.

FISHER, J.

Joseph Ziegler, Richard Wait, Marceline Wait, Paul Johnson, Phillis Hurd, and Frank Tester (the Petitioners) appeal from the final determinations of the Indiana De-partment of State Revenue (Department) denying their claims for refund of Indiana income tax paid for the 1997, 1998, and 1999 tax years (the years at issue).[1] The matter is currently before the Court on the parties' cross-motions for partial summary judgment, in which the following issues have been raised:

I. Whether the Petitioners' appeal may be maintained as a class action lawsuit even though members of the prospective class have not exhausted their administrative remedies as required by Indiana Code § 6–8.1–9–7; and

II. If not, whether Indiana Code § 6–8.1–9–7 violates Article I, §§ 12 and 23 of the Indiana Constitution?

## FACTS AND PROCEDURAL HISTORY

The material facts as they relate to this case are undisputed. The Petitioners are all residents of Indiana and retired federal government employees. In early 2001, each of the Petitioners filed a claim for refund with the Department, claiming that he or she overpaid Indiana income tax "due to an unconstitutional and void tax scheme ... codified at Ind[iana] Code § 6–3–2–3.7." (See Petrs' Designation of Evidence in Supp. of Their Mot. for Partial Summ. J. at Exs. A1–A6.) Specifically, the Petitioners allege that, under Indiana Code § 6–3–2–3.7,

[federal government retirees] ... may only deduct a maximum of $2,000.00 from his or her retirement benefits as derived from Federal Civil Service Annuity income. This is a maximum tax deduction which is lowered if the family of the Federal Retirees also receives Social Security benefits. Therefore, Federal Retirees are paying State in-

---

1. Frank Tester and Joseph Ziegler seek refunds for the 1998 and 1999 tax years; Richard Wait, Marceline Wait, Paul Johnson, and Phillis Hurd seek refunds for the 1997, 1998, and 1999 tax years. (See Petrs' Designation of Evidence in Supp. of Their Mot. for Partial Summ. J. at Exs. A1–A6.)

come taxes on any Federal Civil Service Annuity income in excess of $2,000.00 per year; whereas retired State employees, as well as other couples in Indiana who receive Social Security benefits as retirement income are exempt from State income tax. This disparity is unjustifiable and unconscionable. (Petrs' Designation of Evidence in Supp. of Their Mot. for Partial Summ. J. at Exs. A1–A6.)

In May 2001, the Department acknowledged receipt of the Petitioners' claims for refund; however, it never issued final determinations with respect thereto. Accordingly, the Petitioners initiated this original tax appeal on April 19, 2002.[2]

On October 22, 2002, the Petitioners filed a motion for partial summary judgment, claiming that they were entitled, as a matter of law, to pursue their appeal as a class action lawsuit on behalf of all Indiana taxpayers who were similarly situated (i.e., retired federal employees that also overpaid Indiana income tax as a result of Indiana Code § 6–3–2–3.7). The Petitioners maintain that this class of taxpayers is entitled to refunds of income tax paid since 1977 and "in excess of one **billion** dollars." (Petrs' Designation of Evidence in Supp. of Their Mot. for Partial Summ. J. at Ex. B, p. 7 (emphasis in original).) On March 26, 2003, the Department, in opposition to the Petitioners' motion, filed its own motion for partial summary judgment.

The Court conducted a hearing on the parties' motions on July 22, 2003. Additional facts will be supplied as necessary.

## STANDARD OF REVIEW

A motion for summary judgment will be granted only when there is no genuine issue of material fact, and a party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *Uniden Am. Corp. v. Indiana Dep't of State Revenue*, 718 N.E.2d 821, 824 (Ind. Tax Ct.1999). "If no genuine issue of material fact exists, either the movant or the non-movant may be granted summary judgment." *Encyclopaedia Britannica, Inc., v. State Bd. of Tax Comm'rs*, 663 N.E.2d 1230, 1232 (Ind. Tax Ct.1996) (internal quotation marks omitted). Cross-motions for summary judgment do not alter this standard. *Chrysler Fin. Co., LLC v. Indiana Dep't of State Revenue*, 761 N.E.2d 909, 911 (Ind. Tax Ct.2002), *review denied.*

## DISCUSSION AND ANALYSIS

### I.

The Indiana legislature has prescribed a procedure for obtaining a refund of taxes paid. Specifically, Indiana Code § 6–8.1–9–1 provides that

> If a person has paid more tax than the person determines is legally due for a particular taxable period, the person may file a claim for a refund with the department. .... [I]n order to obtain the refund, the person must file the claim with the department within three (3) years after the latter of the following:
>
> (1) The due date of the return.
>
> (2) The date of the payment.

Ind.Code § 6–8.1–9–1(a) (1999). Only after the person has filed a claim for refund with the Department, and the Department has issued a decision thereon, may the person appeal to the Indiana Tax Court.[3] Ind.Code § 6–8.1–9–1(b) & (c) (1999). *See*

---

**2.** When the Department of Revenue (Department) fails to issue a final determination on a claim for refund within 180 days of its filing, the claim is deemed denied and the taxpayer may pursue an appeal with the Indiana Tax Court. *See* Ind.Code § 6–8.1–9–1(c)(3).

**3.** This is not to say, however, that a taxpayer must always pay a tax liability before chal-

*also* IND.CODE § 33–3–5–2(a) ("[t]he tax court is a court of limited jurisdiction," and is limited to hearing cases that "arise under the tax laws of this state and that [are] initial appeals of final determination[s] made by" either the Department of State Revenue or the Indiana Board of Tax Review); IND.CODE § 33–3–5–11(a) (where "a taxpayer fails to comply with any statutory requirement for the initiation of an original tax appeal, the tax court does not have jurisdiction to hear the appeal[ ]"); *State Bd. of Tax Comm'rs v. Mixmill Mfg. Co.*, 702 N.E.2d 701, 704 (Ind.1998) (stating that "[i]n view of the explicit language of these [statutory] provisions, we can only conclude that the legislature intended to require the taxpayer to follow all statutory procedures for review before going to the Tax Court[ ]").

■ The legislature established a similar procedure for those persons who seek the refund of taxes on a class-wide basis. Indeed, Indiana Code § 6–8.1–9–7 provides in relevant part:

A class action for the refund of a tax ... may not be maintained in any court, including the Indiana tax court, on behalf of any person who has not complied with the requirements of [Indiana Code § 6–8.1–9–1(a) ] before the certification of the class.

IND.CODE § 6–8.1–9–7 (1989). Thus, according to the plain terms of Indiana Code § 6–8.1–9–7, while individual members of a prospective class are not required to have received final determinations from the Department before pursuing class certification, they are required to have at least timely filed claims for refund with the Department. *Id. See also Zayas v. Gregg Appliances, Inc.*, 676 N.E.2d 365, 367–68 (Ind.Ct.App.1997), *trans. denied.*

■ Despite the unambiguous language of Indiana Code § 6–8.1–9–7, the Petitioners maintain that they are nonetheless entitled to pursue their appeal as a class claim on behalf of all similarly situated persons—regardless of whether those persons filed claims for refund with the Department. More specifically, the Petitioners argue that Indiana Code § 6–8.1–9–7 conflicts with Indiana Trial Rule 23[4] in

---

lenging its imposition. Indeed, a taxpayer may protest a proposed assessment by the Department and, upon the Department's issuance of a Letter of Findings thereon (i.e., a final determination), the taxpayer may appeal to this Court. IND.CODE § 6–8.1–5–1(g). While the case is pending with this Court, the taxpayer may seek to temporarily enjoin the collection of the tax. IND.CODE §§ 6–8.1–5–1(h); 33–3–5–11.

4. Trial Rule 23 provides in relevant part:
   *Rule 23. Class actions*
   (A) *Prerequisites to a class action.* One or more members of a class may sue or be sued as representative parties on behalf of all only if:
   (1) the class is so numerous that joinder of all members is impracticable;
   (2) there are questions of law or fact common to the class;
   (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.
(B) *Class actions maintainable.* An action may be maintained as a class action if the prerequisites of subdivision (A) are satisfied, and in addition:
(1) the prosecution of separate actions by or against individual members of the class would create a risk of:
(a) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or
(b) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interest of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

that it "effectively bars the courthouse door to Hoosier taxpayers." (Petrs' Reply Br. In Support of Mot. for Partial Summ. J. at 6.) As such, the Petitioners contend that Indiana Code § 6-8.1-9-7 must be declared invalid. The Court, however, disagrees.

When a rule of procedure and a statute conflict, the rule will govern. *Jackson v. City of Jeffersonville*, 771 N.E.2d 703, 705 (Ind.Ct.App.2002), *trans. denied.* To be "in conflict," however, the rule of procedure and the statute must be incompatible to the extent that both could not apply in a given situation. *Id.* In this case, Indiana Code § 6-8.1-9-7 merely provides that prospective class members first file a claim for refund with the Department before they can be included in a certified class. It does not, by its terms, preclude or bar taxpayers from filing class actions pursuant to Trial Rule 23.

In addition, Trial Rule 23(B)(3) requires this Court to determine whether a class action will be superior to other methods of adjudication, e.g., available administrative remedies. As stated earlier, this Court has exclusive jurisdiction over any case that arises under the tax laws of this state and that is an initial appeal of a final determination made by the Department. *See* I.C. § 33-3-5-2(a). One method to receive a final determination by the Department is to have a request for a refund denied. Thus, when an individual taxpayer seeks a refund of taxes paid, compliance with Indiana Code § 6-8.1-9-1 is mandatory. *See* I.C. §§ 33-3-5-2(a); 33-3-5-11(a). *See also Mixmill Mfg.*, 702 N.E.2d at 704. The underlying purposes and policy for such a requirement has been explained by Indiana's Supreme Court:

> one reason to require [the claim for refund] procedure is to force the dispute into a channel that leads ultimately to the Tax Court. This ... avoids the problem of multiple conflicting litigation [in different courts] on a matter as complex and critical to state government as the validity of a tax. This also provides for the legal infrastructure to process the case in an orderly manner, including timetables for decision.

*State Bd. of Tax Comm'rs v. Montgomery*, 730 N.E.2d 680, 685 (Ind.2000). In other words:

> The sound policy reasons supporting the Tax Court's direct jurisdiction [ ] argue in favor of requiring exhaustion of the refund procedure, because that process ultimately brings the case to the Tax Court. If the legislature wishes to confer original jurisdiction on the Tax Court to entertain claims [in which the taxpayers have not complied with the statutory requirements to invoke its jurisdiction],

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or
(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include:

(a) the interest of members of the class in individually controlling the prosecution or defense of separate actions;
(b) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class;
(c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum;
(d) the difficulties likely to be encountered in the management of a class action.
Ind. Trial Rule 23.

it is of course free to do so. The current statutory framework limits access to the Tax Court to specified procedural channels. [I]t is not irrational to require plaintiffs who wish to present such a claim to proceed through the administrative apparatus the legislature has set up to deal with tax disputes, even if the ultimate constitutional issue may be resolved only at the Tax Court stage. That requirement assures that an adequate record is developed and that non-constitutional issues that may moot [a] constitutional challenge will be considered. The advantages of consolidating the litigation in a forum with expertise are retained. If the cost in time and effort imposed by this procedure is too great, the remedy lies with the General Assembly.

*Id.* at 686.

These policy reasons are no less applicable, or important, in cases where individuals seek tax refunds on a class-wide basis. Indeed, to interpret the two as conflicting would allow those taxpayers participating in class action lawsuits to bypass statutorily mandated administrative procedure, while those taxpayers who challenged the imposition of a tax on an individual basis would be required to exhaust all administrative procedures. As such, taxpayers might be induced to characterize their claims as class actions merely as an attempt to circumvent the exhaustion requirement. The consequences could be profound. The Department would be ill-informed of the claims against it and the tax system it administers, and the Court's case load would grow exponentially, with valuable resources expended in reviewing the factual circumstances behind the individual claims—a task more appropriate for the Department. *See id.* (stating that the administrative bodies must initially determine whether a case can be decided on its

merits, or whether other issues may moot the challenge).

Finally, the Petitioners' reliance on *Clark v. Lee,* 273 Ind. 572, 406 N.E.2d 646 (1980), to support their argument is misplaced. In that case, the Indiana Supreme Court held that several taxpayers, who were challenging the facial constitutionality of Indiana's occupation income tax, were able to maintain their action as a class action pursuant to Trial Rule 23, despite the fact that the prospective members of the class (i.e., non-resident workers who had paid the occupation income tax) had not first exhausted their administrative remedies. *Clark,* 406 N.E.2d at 649. *Clark,* however, is distinguishable from this case.

At the time *Clark* was decided in 1980, Indiana Code § 6–8.1–9–7 did not exist. The statutes addressed procedure only as it related to individual claims. Consequently, case law as it existed at the time addressed only those situations whereby a single taxpayer challenged the imposition of a tax—holding that unless the taxpayer exhausted all administrative remedies, a circuit court was without jurisdiction to determine its challenge regarding the legality of the imposition of a tax. *See id.* at 648–49 (citing *State ex rel. Indiana Dep't of State Revenue v. Marion Circuit Court,* 255 Ind. 501, 265 N.E.2d 241 (1970); *Marhoefer Packing Co. v. Indiana Dep't of State Revenue,* 157 Ind.App. 505, 301 N.E.2d 209 (1973); and *Cooper v. County Bd. of Review of Grant Co.,* 150 Ind.App. 232, 276 N.E.2d 533 (1972)).

When the Indiana Supreme Court decided *Clark,* it merely extended the limited application of these cases to that in which a class was involved. In so doing, the Court in *Clark* held that as long as the *"named* plaintiffs personally satisfied the [statutory] jurisdictional requirements [ ] by exhausting their administrative reme-

dies[,]" the fact that members of the putative class had not exhausted their administrative remedies "is not contrary to the case law[.]" *Id.* With the legislative enactment of Indiana Code § 6–8.1–9–7, however, *Clark* is no longer controlling.

## II.

■ In the alternative, the Petitioners seek a ruling from this Court that Indiana Code § 6–8.1–9–7 violates Article I, §§ 12 and 23 of the Indiana Constitution. The standard of review for alleged violations of the Indiana Constitution is well established: a statute is presumed constitutional until the party challenging its constitutionality clearly overcomes the presumption by a contrary showing. *See State Bd. of Tax Comm'rs v. Town of St. John,* 702 N.E.2d 1034, 1037 (Ind.1998).

### A. *Article I, § 12 of the Indiana Constitution: The Access to Courts Clause*

■ First, the Petitioners argue that Indiana Code § 6–8.1–9–7 violates Article I, § 12 of the Indiana Constitution, which provides: "All courts shall be open; and every person, for injury done to him in his person, property, or reputation, shall have remedy by due course of law. Justice shall be administered freely, and without purchase; completely, and without denial; speedily, and without delay." IND. CONST. art I, § 12. The Petitioners contend that the

> [p]utative class members in this case have a protected property interest in utilizing Rule 23 as a procedural mechanism for pursuing their claims for tax refunds without first having to exhaust independent administrative remedies before the [Department].... [I]mposing th[e] additional procedural burden [of Indiana Code § 6–8.1–9–7] upon putative class members will preclude them

from invoking the only practical legal mechanism available to them for ... obtaining a refund of the taxes which were unconstitutionally collected[.]

(Petrs' Br. In Support of Their Mot. for Partial Summ. J. at 17, 19.)

In *Martin v. Richey,* 711 N.E.2d 1273 (Ind.1999), the Indiana Supreme Court examined Article I, § 12 in the context of considering the constitutionality of the medical malpractice statute of limitations. In so doing, it noted that it had never held that there was a "fundamental right" to access to the courts. *Id.* at 1283. Rather, it recognized that the legislature "has the authority to modify or abrogate common law rights provided that such change does not interfere with constitutional rights." *Id.* It then held that the occurrence-based statute of limitations was unconstitutional as applied to the plaintiff because otherwise the statute "would impose an *impossible* condition on plaintiff's access to courts and ability to pursue an otherwise valid tort claim." *Id.* at 1284 (emphasis added). In other words, the statute as applied completely denied plaintiff all access to the courts.

Unlike the plaintiff in *Martin,* the putative class members the Petitioners' seek to represent are not completely denied access to this Court. Rather, they are merely required to present their claims first to the Department. Thereafter, they may invoke the jurisdiction of this Court. Accordingly, the Petitioners have not overcome the presumptive constitutionality of Indiana Code § 6–8.1–9–7.

### B. *Article I, § 23 of the Indiana Constitution: The Privileges and Immunities Clause*

■ The Petitioners also contend that Indiana Code § 6–8.1–9–7 violates Article I, § 23 of the Indiana Constitution. It provides: "The General Assembly shall not grant to any citizen, or class of citi-

zens, privileges or immunities, which, upon the same terms, shall not equally belong to all citizens." IND. CONST. art. I, § 23. According to the Petitioners, Indiana Code § 6–8.1–9–7 is unconstitutional under Section 23 because it creates an impermissible distinction between litigants filing a class action lawsuit under Trial Rule 23 and taxpayers filing a class action lawsuit under Indiana Code § 6–8.1–9–7. In other words, the Petitioners maintain that the legislature irrationally "single[d] out taxpayers as the *only* group of individuals required to exhaust administrative remedies ... as a condition precedent to pursuing a class based claim." (Petrs' Br. In Support of Their Mot. for Partial Summ. J. at 13 (emphasis in original).)

■■■ Claims asserted under Article 1, § 23 are subject to the two-part test enunciated in *Collins v. Day*, 644 N.E.2d 72 (Ind.1994). First, the disparate treatment accorded by the legislation must be reasonably related to the inherent characteristics that distinguish the unequally treated class. *Collins*, 644 N.E.2d at 78–79. Second, the preferential treatment must be uniformly applicable and equally available to all persons similarly situated. *Id.* at 79. In determining whether a statute complies with or violates Article I, § 23, courts must exercise substantial deference to legislative discretion:

Legislative classification becomes a judicial question only where the lines drawn appear arbitrary or manifestly unreasonable. So long as the classification is based upon substantial distinctions with reference to the subject matter, [the Court] will not substitute [its] judgment for that of the legislature; nor will [it] inquire into the legislative motives prompting such classification.

*Id.* at 80 (internal quotation and citation omitted).

As more fully discussed in Part I above, the underlying purposes and policy of Indiana Code § 6–8.1–9–1, and thus Indiana Code § 6–8.1–9–7, justify the difference in treatment between taxpayers seeking a refund of taxes on a class-wide basis and other litigants seeking relief on a class-wide basis. Indeed, the exhaustion of the claim for refund process is the only way by which taxpayers can bring a refund case to the Tax Court; conversely, it is the only way by which this Court has jurisdiction to hear such appeals. *Montgomery*, 730 N.E.2d at 686. Furthermore, tax disputes are of a particularly sensitive nature: the disruption of the state's prompt and orderly collection of taxes (and, in this case, the possibility that more than one billion dollars could be removed from the State's treasury) could have catastrophic effects on Indiana's economy, let alone the solvency of the state government. For these very reasons, the Indiana legislature has drawn classifications between taxpayers seeking a refund of taxes on a class-wide basis and other litigants seeking relief on a class-wide basis that are neither arbitrary nor manifestly unreasonable. *See Budden v. Bd. of School Comm'rs of City of Indianapolis*, 698 N.E.2d 1157, 1162 & n. 7 (Ind.1998) (stating that the preconditions set forth in Indiana Code § 6–8.1–9–7, as well as other tax refund statutes, "demonstrate that class claims are not personae non gratae in suits against the government[ ]"). Because the disparate treatment in this case is reasonably related to the inherent characteristics that distinguish taxpayers from other litigants, the Court concludes that Indiana Code § 6–8.1–9–7 does not violate Article I, § 23 of the Indiana Constitution.

## CONCLUSION

For all the aforementioned reasons, the Court holds that Indiana Code § 6–8.1–9–7

does not conflict with Trial Rule 23, nor does it violate Article I, §§ 12 and 23 of the Indiana Constitution. Consequently, the Court denies the Petitioners' motion for partial summary judgment and, in turn, grants the Department's motion for partial summary judgment. The Court will schedule an attorneys' conference in this case in a separate order.